## Elijah Heath v. William Armstrong.

1. To entitle a party to read in evidence a warrant issued since 22d Sept., 1794, when the land office was closed against the issuing of any warrants, except where an actual settlement had been or thereafter should be made, &c., he should show from the books of the office that the officers were by law authorized to issue it.

2. Where lines and corners are found, they cannot be departed from, though there may be a variance in the course and distance.

Error to the Common Pleas of Jefferson.

This was an action of ejectment by William Armstrong against Elijah Heath. The first evidence offered by the plaintiff was two warrants, numbers 5700 and 5701, to George F. Alberti, for 1000 acres each, dated 15th December, 1794, to the admission of which in evidence the defendant excepted. These were followed by separate surveys and drafts of 2d February, 1795, of 988 acres on the first, and 1006½ acres on the second of these warrants. These lands falling in arrear for county and road taxes from 1821 to 1827, were sold for the same to the plaintiff. The plaintiff claimed that some 320 acres of land in the possession of the defendant, and which the defendant claimed under warrant, survey, and patent of 1839, were included in his surveys upon his warrants 5700 and 5701. The testimony on both sides was of surveyors as to the marks upon the ground, which it is unnecessary here to present.

The verdict was in favour of the plaintiff. What the errors assigned were, only appears from the notice of them in the opinion of this Court.

*White*, for the plaintiff in error.—The warrants of Alberti were

void: Bixler *v.* Baker, 4 Binn. 213; Smith *v.* Oliver, 11 S. & R. 257; Barton *v.* Smith, 1 Rawle, 403.

*Gordon,* contrà.

BURNSIDE, J.—The first error assigned was to the admission of the warrants Nos. 5700 and 5701 to George F. Alberti in evidence. These warrants bore date the 15th December, 1794. The land office closed on the 22d September, 1794, against the issuing of any more warrants for lands within the Commonwealth except for lands where a settlement has been or hereafter shall be made, grain raised, and a person or persons residing thereon: Dunlop, 157; 3 Smith's Laws, 193; provided, that all persons shall have the benefit of the Act passed March 29, 1792, entitled "An Act to authorize the Receiver-General of the land office to carry moneys received into that office since a given period for such lands sold, and which have not been nor shall be secured to the purchasers, to the credit of such purchasers, or their assigns, in payments already due and hereafter to become due to the Commonwealth, for the purchase of any lands within the same," agreeably to the provisions contained in a supplement (3 Smith, 93) to the said Act passed 6th March, 1793. The construction of these Acts came under the deliberate consideration of the Supreme Court in Ward *v.* Armstrong, 3 S. & R. 305, and it was held that the credits on the books of the Receiver-General could not be applied on 31st December, 1794, to pay for a warrant of that date for unimproved land, founded on any application entered on the 19th of the same month. Those credits were held only to be valid when applied for the payment of the purchase-money of land for which application had been made prior to 22d September, 1794. In that case Ward and others, who were plaintiffs in error and defendants below, gave in evidence a certificate from the Receiver-General showing that Samuel Martin had a credit on his books for £5, which credit was, on the 31st December, 1794, applied to the payment of a warrant for 150 acres of land, granted to the said Martin on the same day, founded on an application entered on 19th of the same month, and then offered the warrant to Martin for 150 acres of unimproved land, of the 31st December, 1794, which was rejected by President Walker, and that opinion, after a most careful examination of the various Acts of Assembly to which I refer, was affirmed, and it was held such credits might be applied to the payment of the purchase-money of land,

for which application had been entered prior to 22d September, 1794. The same principle is recognised, so far as the case applied, in Smith *v.* Oliver, 11 S. & R. 265. As the warrants were presented to the Court, they ought to have been rejected, as they issued since the office closed on 22d September, 1794. To be of any validity and to entitle them to be read, the plaintiff ought to have shown from the books of the land office, that the officers were by law authorized to issue them. The land officers are public agents intrusted with power to grant lands in the name of the Commonwealth, not absolutely, but under the conditions prescribed by law, of which conditions every applicant is bound to take notice: Bixler *v.* Baker, 4 Binney, 219. Whether the plaintiff will be able to show that his warrants were legally issued, will remain to be seen if he chooses to try his cause again.

The other errors complained of, respecting the survey, will be considered together. We can only state general principles which regulate questions of this kind. In Hall *v.* Powell, 4 S. & R. 454, and in cases there cited, as well as in subsequent decisions of this Court, the law is settled that where lines and corners are found they cannot be departed from, though there may be a variance in the course and distance. This is the governing rule. But this is a strange case: here is a return on a 1000 acre warrant, of 1006½ acres; all this appears fair, but there is claimed within its alleged boundaries 1548 acres, if it extends to Leroy's survey, No. 3144, and the chestnut near the river will be off its course. By establishing that chestnut, both of Alberti's surveys have their full quantity, and this will be maintaining the principle which the Legislature established when they declared in the Act of 1785, § 15, 2 Smith's Laws, 323, that the surveys in this purchase should be made by the deputy, by actually going on and measuring the land. And in case any survey should be found to contain a greater quantity of land than was mentioned in the warrant, so that the excess did not exceed one-tenth of the number of acres mentioned, the return was to be received, if the party procuring the return *forthwith* paid to the Receiver-General the price or value of the excess.

Judgment reversed, and a *venire de novo* awarded.